■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AARON E. BOYCE, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Suffolk County (Canudo, J.), rendered November 12, 1980, convicting him of robbery in the first degree, upon a plea of guilty, and imposing sentence. The appeal brings up for review the denial of defendant's motion to suppress certain evidence. Judgment reversed, on the law, motion to suppress granted, guilty plea vacated, and matter remitted to the Supreme Court, Suffolk County, for further proceedings consistent herewith. Under the circumstances, Criminal Term erred in finding that the complainant could make an in-court identification of defendant, despite a possibly defective lineup, on the ground that the complainant's opportunity to observe the robbery gave the identification an independent source (see *United States v Wade,* 388 US 218; *Manson v Brathwaite,* 432 US 98). Thus, defendant's motion to suppress the identification testimony should have been granted. Early in the morning of May 27, 1979 complainant, the night clerk at the Smithtown Motor Lodge, was robbed at gunpoint by three men, one of whom was armed. Although he was able to give a description of the gunman so that a composite sketch could be drawn, he could only give a general description of the other two. In September, 1979 the clerk was shown a number of photographs of suspects and narrowed down the photospread to two, including one of the defendant. However, he could not make any identification and could not say that either of the men in the photographs had actually been involved. In November of 1979 the clerk was taken to Morristown, New Jersey, by the detective and the Assistant District Attorney assigned to the case, to view a lineup in which defendant was a participant. There were six men seated in the lineup, all holding number cards. Although at the *Wade* hearing the clerk testified that he was not given any instructions, he admitted that he was told by the New Jersey investigator in charge of the lineup to "write down the number" of the person he recognized. This testimony was supported by other witnesses. When asked by the court what he meant by "the number", the clerk stated, "Well, the individuals in the room had numbers". After viewing the first lineup, the clerk wrote down the

number "4", indicating a person other than defendant. After a 10-minute interval, in which the numbers and the participants were shuffled around, a second lineup was conducted. On this second viewing, the participants, one at a time, stood and walked towards the viewing window. Following this lineup, the clerk wrote down the number "5". The same man who held the number card "4" in the first lineup held the number card "5" in the second lineup. He was a Deputy Sheriff, and not the defendant. The New Jersey officials, the Suffolk County detective, the Assistant District Attorney, and defendant's attorney all agreed that there had been no identification. On the return trip to Suffolk County the clerk was told that he had failed to select the suspect. After expressing his disbelief, he then explained that he had indicated the man "positionwise", that is, as the fourth person counting left to right in the first lineup and as the fifth person counting right to left in the order in which they had approached the window in the second lineup. He additionally stated that the man had been wearing a turtleneck shirt, which, in fact, defendant had been wearing. Defendant's attorney was told of this "identification" the following week. At the *Wade* hearing, the clerk stated that he had been "slightly confused" during the lineups; however, he never indicated what had confused him, nor did he ever ask for clarification or instructions. Despite the fact that the numbers he wrote were not the same as those defendant had exhibited, and which he indicated he understood were the numbers to be written down, he never explained to anyone at the lineup that the numbers he wrote down referred to defendant. Additionally, although he allegedly told the Suffolk County detective that he was slightly confused, the detective never attempted to clarify his confusion, nor did he suspect that because of this confusion a misidentification, rather than no identification, had occurred. This alleged identification is too fraught with risk and doubt to be allowed to stand. It has been held that it is improper to tell a lineup viewer that he has not selected the suspect (*United States v Jarvis,* 560 F2d 494), although doing so may not, in all cases, be reversible error. The potential for harm of a justifiably disappointed witness attempting a second or third guess as to the "right" lineup participant is too great. Additionally, it cannot be said that there exists here an "independent source" sufficient to sustain an in-court identification. The burden is on the People to establish this basis by clear and convincing evidence (*People v Ballott,* 20 NY2d 600, 606, 607). The factors to be considered in making this determination were established in *United States v Wade* (388 US 218, *supra*) and include, among other things, the prior opportunity to observe the criminal activity, and the failure to identify the defendant on a prior occasion (see *People v Bruno,* 77 AD2d 922, 923). Here, the complainant testified at the suppression hearing that he had observed all three robbers in good light during the 10-minute robbery. However, he also admitted that he had been concentrating on the man with the gun (who was a person other than the defendant), and in fact, this was the only one of the three robbers whom he could describe to the police in any detail. There was also evidence at the hearing that the complainant had been unable to identify defendant from photographs; although he narrowed down the group of photographs to two, including one of defendant, he could make no selection or positive identification. Then, at the lineup, he apparently selected another person, not defendant, but one who resembled defendant. The hearing court's finding of "independent source" consisted of one sentence in which it stated that the complainant's observation of "the perpetrator" at close quarters for 10 minutes was sufficient. Generally, the findings of fact made by the hearing court are entitled to great weight, and should not be disturbed when they are supported by the record (see, e.g., *People v Duncan,* 75 AD2d 823, 824). Although the

complainant here gave answers indicating his ability to observe the robbers, the objective facts, i.e., his admitted concentration on the third robber, his inability to describe the others and his inability to make an identification, do not support this testimony. Hence, since insufficient evidence was adduced to support a finding of an "independent source", it follows that no in-court identification should be permitted (see *People v Taylor,* 68 AD2d 864; *People v Simon,* 49 AD2d 517; cf. *People v Posten,* 54 AD2d 948). Damiani, J. P., Titone, Weinstein and Bracken, JJ., concur.