■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE RUBIO, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Richmond County (Sangiorgio, J.), rendered November 10, 1983, convicting him of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Felig, J.), of that branch of defendant's omnibus motion which was to suppress identification testimony. By order dated March 25, 1986, this court remitted the matter to the Supreme Court, Richmond County, to hear and report after conducting a *Wade* hearing, and held the appeal in abeyance in the interim *(see, People v Rubio,* 118 AD2d 879). The Supreme Court, Richmond County, has complied.

Ordered that the judgment is reversed, on the law and the facts, and a new trial is ordered.

The charges in this case arose out of an alleged sale of heroin in which the defendant acted as an intermediary between the seller, known only as "Les", and the buyers, an undercover police officer and his confidential informant. In order to avoid exposure of the true identities of the officer and the informant, no arrest was made at the time of the alleged transaction, which lasted no more than five minutes. However, when the police returned to the scene several hours later, the suspects could not be located. Some 27 days later, the informant spotted the defendant in the vicinity of the location in which the sale had taken place. The police were notified and the defendant was arrested *(see, People v Rubio, supra).* After the undercover officer was notified that a suspect had been arrested, he came to the precinct and viewed the defendant through a one-way mirror as the defendant stood either alone or with a police sergeant. The undercover officer identified the defendant as one of the participants in the drug sale. At trial, this officer was permitted to identify the defendant as one of the participants in the sale and he further testified that he had identified the defendant through a one-way mirror at the precinct 27 days after the drug sale.

We find no merit to the People's argument that the *Wade* hearing court correctly found that the undercover officer's viewing of the defendant was a confirmatory identification to insure that the proper person was arrested. The undercover officer was identifying the defendant for the first time as a participant in a drug sale. The present facts therefore are

clearly distinguishable from those in *People v Morales* (37 NY2d 262) where the undercover officer had returned to the street after the drug buy and identified the defendant, and was viewing the defendant for the third time when he confirmed that the backup team had picked up the man he had identified. In *Morales,* as distinguished from the instant case, at the time the undercover officer viewed the confirmatory showup, "identification was behind him" *(People v Morales, supra,* at 272). The present identification was analogous to an identification by a civilian witness who views a lineup or showup after a crime.

Moreover, we find that the instant showup was so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny the defendant due process of law. The showup took place 27 days after the drug sale, and the defendant was either alone or with a sergeant in the room. There was no need to utilize the showup procedure since the defendant had already been identified by the informant and arrested *(see, People v Osgood,* 89 AD2d 76; *People v Mercado,* 63 AD2d 720; *People v Baez,* 103 AD2d 746). Nor was there was any exigent reason for holding this showup *(see, People v Ford,* 100 AD2d 941; *People v Osgood, supra).*

Although the undercover officer's in-court identification was properly admitted at trial since there was an independent basis for it, it was error for the trial court to allow the undercover officer to testify at trial to his identification of the defendant at the suggestive showup *(see, People v Adams,* 53 NY2d 241). In our view, this error cannot be considered harmless since the proof of the defendant's guilt was not overwhelming *(see, People v Crimmins,* 36 NY2d 230, 241). The undercover officer testified that he had participated in so many undercover buys that he could not recall any particular one without referring to his notes, and that he would not be able to testify without looking at his notes. The notes reveal only a very general description of the perpetrator. At trial the undercover officer testified that he was told before viewing the defendant in the showup that the police had someone who fit the description of the person he had bought drugs from on the date in question, i.e., the defendant. Indeed, the jury was concerned about the circumstances surrounding the undercover officer's subsequent identification of the defendant as they asked during their deliberations whether the undercover officer had viewed the defendant in a lineup.

The only other evidence connecting the defendant to the instant crime is the testimony of a paid informant. While the

informant did identify the defendant as a participant in this transaction, he was confused as to the date of the transaction as well as his subsequent identification of the defendant. Furthermore, the informant was a former heroin addict who was using methadone daily at the time of trial. His description of the perpetrator varied from that given by the undercover officer. Under these circumstances, we conclude that the proof of the defendant's guilt was not overwhelming, and that the error in permitting the undercover officer to testify to his identification made pursuant to an unduly suggestive showup cannot be viewed as harmless. Bracken, J. P., Lawrence, Rubin and Eiber, JJ., concur.